# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| MARK YOUNIE,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF HARTLEY, IOWA,<br><br>    Defendant. | No. 14-CV-4090-CJW<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

This matter is before the court pursuant to a motion for summary judgment filed by the City of Hartley, Iowa (the City). Doc. 18. Plaintiff Mark Younie (plaintiff) resisted the motion for summary judgment. Doc. 24. On April 12, 2016, the court heard oral arguments on the motion. The court deems the motion for summary judgment fully submitted. For the reasons set forth herein, the court denies the City's motion for summary judgment.

## II. PROCEDURAL HISTORY

On October 16, 2014, plaintiff filed a four-count complaint against the City. Doc. 2. Plaintiff alleges he was employed by the City as its police chief pursuant to a written contract until January 21, 2014, when his employment was terminated. He contends that his discharge was (a) in retaliation for conduct protected by the Fair Labor Standards Act (FLSA), (b) a breach of contract, and (c) a violation of Iowa public policy. Doc. 2, Counts I, II and IV. He further contends that the City violated the Iowa Wage Payment Collection Act by failing to pay certain wages after the termination, as allegedly

required by the parties' contract.  *Id*., Count III.  In plaintiff's resistance to the motion for summary judgment, plaintiff conceded that his contract claims could not survive a motion for summary judgment.  Doc. 24, at 1 n.1.  Accordingly, on January 4, 2016, plaintiff dismissed Counts II and III of the complaint.  Doc. 21.  Only Count I (retaliatory discharge) and Count IV (wrongful discharge) remain.

On November 17, 2014, the City filed a motion to dismiss the complaint, alleging plaintiff failed to state a claim under Count I because he was not actually covered by the FLSA.  Doc. 4.  On April 9, 2015, this court denied the City's motion to dismiss, finding that although the FLSA provisions do not apply in this case because the police department had fewer than five employees, plaintiff alleged he, in good faith, believed it did.  Doc. 14.  Therefore, the court concluded plaintiff stated a valid federal claim when he alleged the City fired him in retaliation for filing a grievance asserting a violation of the FLSA, even though he was not, in fact, protected by the Act.  *Id*.

The City has since filed an answer (Doc. 15), and its motion for summary judgment followed.

The parties consented to have a United States Magistrate Judge conduct all proceedings pursuant to Title 28, United States Code, Section 636(c).  Doc. 12.

### III.  UNDISPUTED MATERIAL FACTS

Plaintiff began working as the chief of police for Hartley, Iowa, on December 31, 2011.  Doc. 23, ¶ 1.[1]  Mayor Clayton Pyle (the mayor) was plaintiff's supervisor.  Doc. 23, ¶ 2.  When the City interviewed plaintiff for the chief's position, the

---

[1] The City did not object to plaintiff's Statement of Additional Material Facts (Doc. 23), and therefore those facts are deemed admitted for purposes of ruling on the motion for summary judgment.  LR56(d) ("The failure to reply, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact.").

enforcement of the city's "critical" nuisance ordinance was discussed, and plaintiff indicated he was enthusiastic about enforcing it. Doc. 22, ¶8; Def. App. 162.[2]

In April 2012, the mayor signed off on plaintiff's evaluation, which stated that his overall job performance was "good." Doc. 23, ¶ 3. The wage committee of the Hartley City Council gave plaintiff a salary increase in 2013, which one committee member testified would have occurred in response to the mayor's recommendation. Doc. 23, ¶¶ 4 & 5. In the spring and summer of 2013, the mayor orally reprimanded plaintiff on two or three occasions (exactly when and why is not in the record). Doc. 23, ¶¶ 6 & 7.

In September 2013, plaintiff worked the day shift from 8:00 a.m. until 4:00 p.m. Doc. 23, ¶ 8. Plaintiff remained in his uniform and had the responsibility to respond to calls over his lunch hour. Doc. 23, ¶ 9. On September 12, 2013, due to concern about the danger of school children abduction (Def. App. 163), the mayor left a note on plaintiff's desk, which stated:

> I believe that this was brought up last year around school was about to get out and I told you I wanted you to be out from <u>7 am to 4:00 pm</u> with 1 hour lunch time. I hope to see this start immediately. If you have a problem with this please get in touch with me. Thanks.

Exhibit 23 (emphasis original); Doc. 23, ¶11; Doc. 22, ¶ 1. Plaintiff considered the note "harassing" or "offensive." Doc. 22, ¶¶ 2 & 3. The next day, plaintiff filed two written grievances with the City by providing them to the City Clerk. Doc. 23, ¶¶ 13

---

[2] Document 22 in the court's file is plaintiff's response to the City's statement of material facts. The City's statement of facts set out in its brief in support of its motion for summary judgment (Doc. 18-1), did not include separately numbered paragraphs as required by Local Rule 56(a). In his response, however, plaintiff reproduced each statement of fact assigning them numbers, so the court will cite to plaintiff's response so that reference can be made to specific numbered paragraphs.

3

& 14. Plaintiff filed his grievances directly against the mayor, and not against the City Council. Doc. 22, ¶5.

One grievance alleged the mayor was interfering with plaintiff's work performance and alleged the mayor created a hostile work environment. Exhibit 24. In that grievance, plaintiff referenced a meeting he had with the mayor "a few months ago in reference to your perspective of my poor job with the cities [sic] nuisance program." *Id*. It also referenced statements the mayor had allegedly made to others that plaintiff was "not working out to be what [he] promised to be at [his] interview," and that "the town has never looked this bad." *Id*.

The other grievance referenced the mayor's September 12, 2013, note instructing plaintiff to work a 7:00 a.m. to 4:00 p.m. shift. Exhibit 25. That grievance also complained about having to work the requested hours for various reasons, and claimed that a requirement to work those hours would violate the FLSA. Exhibit 25.

On September 18, 2013, the City Clerk and City Attorney met with plaintiff to hear his grievances. Exhibit 32.

On September 20, 2013, the City Clerk and City Attorney met with the mayor to discuss the grievances. *Id*.

The city clerk investigated plaintiff's grievance by speaking with the other police officers and the Superintendent of Public Works with whom plaintiff said he discussed his employment situation. *Id*.

On October 8, 2013, plaintiff met with the mayor, the City clerk, and the City attorney to discuss the grievances. Doc. 22, ¶10. After the October 8, 2013, meeting, plaintiff felt he and the mayor had "put the grievances behind them." Doc. 22, ¶11. The mayor stated that he also "felt everything was resolved with regard to the grievances" after the October 8, 2013. Def. App. 163, ¶7.

Plaintiff was satisfied with the city clerk's investigation into the grievances, but indicated he was dissatisfied with what he felt was a hostile work environment. Doc. 22, ¶ 6. After the October 8, 2013, meeting, professional communication between plaintiff and the mayor continued. Doc. 23, ¶19. Communication may have decreased in November and December because plaintiff began working the night shift in November 2013. Doc. 23, ¶ 20.

On October 28, 2013, the City provided plaintiff with a written response to his two grievances. Exhibit 32.[3] The letter recounts the investigation conducted by the City Clerk and some of the statements made at the October 8, 2013, meeting.

Following plaintiff's filing of the grievances on September 13, 2013, plaintiff did not receive any subsequent oral or written reprimands, nor was he otherwise disciplined. Doc. 23, ¶ 21.

On January 3, 2014, the mayor issued an "Order of Removal," notifying plaintiff that "you have been removed from the position of Police Chief for the City of Hartley, effective immediately on January 3, 2014." Def. App. 166. The mayor listed in headings, followed by explanation, three reasons for the Order of Removal: (1) "refusal to recognize authority and accept supervision"; (2) "complete breakdown in communications"; and (3) "apparent dissatisfaction with job duties." Def. App. 166-69. Under the last heading, the mayor expressed his dissatisfaction with plaintiff's failure to enforce the nuisance ordinance. Def. App. 166-69.

The Order of Removal advised plaintiff that he was entitled to a public hearing before the City Council. Def. App. 168-69. It stated: "Since I appointed you, I am the officer who has the power to remove you." Def. App. 168. The Order of Removal

---

[3] The version of the letter filed as an exhibit with the court is two pages long and is incomplete, ending in the middle of a sentence. The page containing the signature page is missing, but from the context the letter appears to be written by the City Clerk.

referenced Iowa law, advising plaintiff that he was entitled to a public hearing before the City Council to contest his removal, noting that if plaintiff did not ask for the hearing within 30 days, he would have waived his right to a hearing. *Id*.

Plaintiff requested a public hearing, which convened on January 21, 2014. Doc. 22, ¶ 18. During the public hearing, plaintiff turned the lectern away from the council and faced the audience and television cameras, which offended at least two City Council members. Def. App. 171, 180. The City Council voted to terminate plaintiff's employment. *Id*.

In an affidavit, the mayor stated that plaintiff was "insubordinate" for failing to report to work at 7:00 a.m. Def. App. 163, ¶6. The mayor also expressed his belief that plaintiff's "reaction to the note and his failure to visit with me about the note indicated the communication was breaking down badly." Def. App. 164, ¶13.

In his deposition, the mayor testified about the grievances and his decision to fire plaintiff.

> Q. You would agree with me that if Chief Younie felt harassed, he had a right to file the grievance?
>
> A. I felt if he thought that I was harassing first he would come talk to me. That is called communication.
>
> Q. But there's nothing in the handbook that required him to approach the person he feels harassed by before filing a grievance?
>
> A. That's correct. But at the same token, he talked, I talked. Communication was important. If that was the case, he could have came forward and said, hey, we've got a little problem here. We need to iron this out instead of throwing a grievance letter on me. I've never had one in my life.
>
> Q. Nothing—in fact, he complied with the handbook—
>
> A. That was his choice.

6

Q. —in issuing this grievance?

A. That was his choice, yes.

Pl. App. 12 (Pyle Dep. 154-55).

Q. Sometime—so after October 28th, what happened with the police chief? When did you decide that you were going to remove him?

A. I started noticing more and more that once he filed these grievances I felt that he was using that for a leverage that he has his own control, that I was not in charge of him anymore and he could do what he wanted because he had the grievances thrown against me. And things kept deteriorating from there on. I had no contact. There was nothing from there on until we made it on January.

Q. So the grievances were a turning point for you?

A. That kind of helped with the situation from other things that was occurring. But it was not the main factor of our removal.

Q. What were the main factors of your removal?

A. Our main factor was the authority. He did not go and take—do our authority or to do our breakdown of communications and also was dislike of his police duties.

Pl. App. 13 (Pyle Dep. 159).

Q. So the grievance letters were the breakdown in communication?

A. No. No. There was other things that—that was not even—that was not involved in this at all to make my decision of removal. Like I said before, there were things on there that he never brought forth about our new vehicle. I mean, that might be petty in my point, but I still was responsible. … There was—I felt that there was also, like I said, the work schedules weren't on time. And I just felt that was my most biggest thing on the removal, of the breakdown

7

>
> of communications and also not recognizing my authority over the police department.
>
> Q. If I look at the typewritten notes from the police meetings and I compare it with—which are as far back as March of 2013—compare it with what's written in the removal order, the complaints seem to be the same. So I'm trying to figure out what changed in that timeline that all of a sudden removal was the only remedy in your opinion?
>
> A. Because I felt I lost control of him.
>
> Q. At what point did you feel you lost control?
>
> A. When he dropped the grievances. And then after that there was no communication. Nothing was still until January.

Pl. App. 13-14 (Pyle Dep. 161-62).

## IV. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotation and citation omitted). An issue of material fact is "genuine" if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992), or when "a reasonable jury could return a verdict for the nonmoving party on the question, *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing version of the truth at trial." *Anderson*, 477 U.S. at 248-49.

The party moving for summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395. Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita*, 475 U.S. at 587-88. *See also Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, the court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them.") (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). The court does "not weigh the evidence or attempt to determine the credibility of witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## V. RETALIATION CLAIMS UNDER THE FLSA

Count I of the complaint invokes a federal statute, the FLSA, and alleges that the City discharged plaintiff in violation of 29 U.S.C. § 215(a)(3). That statute provides, in relevant part, that it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). Plaintiff alleges the grievance he submitted on September 13, 2013, alleging a violation of FLSA, was protected conduct within the meaning of Section 215(a)(3), and that the City then violated that statute by terminating his employment because he filed the grievance.

To establish a prima facie case of retaliation under the FLSA, a plaintiff must show: (1) he participated in statutorily protected activity; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between the events. *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034-35 (8th Cir. 2005).

In denying the City's motion to dismiss, this court previously held that plaintiff engaged in protected activity if he had a good faith belief that the mayor's instruction to work the expanded shift violated the FLSA, regardless of whether he was covered by the FLSA. Doc. 14. When an employee files a grievance with an employer about wages and hours, it constitutes the filing of a complaint as that term is used under the FLSA. *See Minor v. Bostwick Laboratories, Inc.,* 669 F.3d 428, 439 (8th Cir. 2012) (holding that intracompany complaints may constitute the "filing of a complaint" under the FLSA). Thus, plaintiff's filing of the grievance alleging the violation of the FLSA was protected activity if plaintiff filed the grievance with a good faith belief he was covered by the FLSA. The City has not moved for summary judgment on the ground that plaintiff was not engaged in protected activity. Therefore, whether plaintiff filed the grievance in a

good faith belief he was covered by the FLSA will be a question for the jury to decide. For purposes of ruling on this motion for summary judgment, the court assumes the first element is not in dispute.

When the mayor issued the Order of Removal, it effectively terminated plaintiff's employment. Under state law, plaintiff had 30 days to ask for the City Council to review the decision, but in the meantime, his employment was suspended. That Order of Removal, therefore, constituted an adverse employment action. *See Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997) (suspension from employment is an adverse employment action). Obviously, plaintiff's ultimate termination of employment constituted an adverse employment action. *See Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011) ("Pye's termination was clearly an adverse employment action."). The City has not moved for summary judgment on the ground that plaintiff's suspension and termination did not constitute adverse employment actions. Therefore, that, too, will be a question for the jury to decide, but is not an issue the court needs to address in ruling on the motion for summary judgment.

At the hearing, the parties agreed that the only issue in dispute for purposes of this motion for summary judgment is whether the City fired plaintiff because he filed the grievance claiming a violation of the FLSA. "The ultimate question in any retaliation case is whether the employer's adverse action against the employee was motivated by retaliatory intent." *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1119 (8th Cir. 2006). In analyzing a retaliation claim under the FLSA, the court applies the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applicable to employment discrimination cases brought pursuant to Title VII of the Civil Rights Act of 1964. *See*, *e.g.*, *Grey*, 396 F.3d at 1034 (applying the *McDonnell Douglas* burden-shifting framework to a retaliatory discharge claim under FLSA); *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006) ("An employee can prove

11

retaliation through circumstantial evidence using the *McDonnell Douglas* burden-shifting analysis." (citations omitted)).

Under this framework, an employee must "carry the initial burden … of establishing a prima facie case." *McDonnell Douglas*, 411 U.S. at 802. *See also Hess v. Avis Rent a Car Sys., Inc.*, 394 F.3d 624, 632 (8th Cir. 2005) (holding that the *McDonnell Douglas* framework also applies to retaliation claims, and starts with the employee's burden of making a prima facie case). A plaintiff's burden at the prima facie stage of the analysis is not an onerous one. "A minimal evidentiary showing will satisfy this burden of production." *Rodgers v. U.S. Bank, N.A.*, 17 F.3d 845, 850 (8th Cir. 2005) (internal quotation and citation omitted).

"The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. When retaliatory discharge is alleged, this means the employer has to articulate some legitimate, nonretaliatory reason for the discharge. *See Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007) ("If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to show a nonretaliatory reason for the adverse employment action." (internal quotations and citations omitted)).

If the employer is able to articulate a legitimate, nonretaliatory reason, then "the burden returns to the plaintiff who is then obligated to present evidence that (1) creates a question of fact as to whether defendant's reason was pretextual and (2) creates a reasonable inference that defendant acted in retaliation." *Stewart*, 481 F.3d at 1043 (internal quotations and modifications omitted). "[A]n employee's attempt to prove pretext requires more substantial evidence than it takes to make a prima facie case because unlike evidence establishing a prima facie case, evidence of pretext and retaliation is viewed in light of the employer's justification." *Logan v. Liberty Healthcare Corp.*,

416 F.3d 877, 881 (8th Cir. 2005) (internal quotation omitted). Indeed, to show pretext an employee "must show that the employer's proffered reason was unworthy of credence." *Wallace*, 415 F.3d at 860 (internal quotation omitted). "To demonstrate pretext … the plaintiff must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination." *McNary v. Schreiber Foods, Inc.*, 353 F.3d 765, 769 (8th Cir. 2008) (internal quotations omitted). "The ultimate burden of proof or persuasion to show that the employer's conduct was motivated by retaliatory intent remains at all times on the plaintiff." *Wallace*, 442 F.3d at 1119 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

If an employer has articulated a legitimate reason for adverse employment action, "it is permissible for courts to presume the existence of a prima facie case and move directly to the issue of pretext"; indeed, determining the "issue of causation when bypassing the prima facie case analysis leads to clarity in framing the issues under review." *Stewart*, 481 F.3d at 1043. Of course, "strong evidence of a prima facie case" may also help show the proffered explanation was pretextual. *Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 834 (8th Cir. 2002). At the hearing on this motion, the parties agreed that the City has articulated legitimate, nonretaliatory reasons for terminating plaintiff's employment. Therefore, the court must determine if there is a genuine issue of material fact whether the City's proffered reason for plaintiff's discharge was pretextual. In other words, the question is whether there is a genuine issue of material fact that the City fired plaintiff because he filed a grievance alleging a violation of FLSA.

## VI. DISCUSSION

"To prove a causal connection, [an employee] must demonstrate that the [employer's] retaliatory motive played a part in the adverse employment action." *Thomas v. Corwin*, 483 F.3d 516, 531 (8th Cir. 2007) (internal quotations omitted). "A causal connection implies not just a relationship between two events, but a certain type of relationship in which one event is generated by the other." *Zhuang v. Datacard Corp.*, 414 F.3d 849, 856 (8th Cir. 2005). In short, an employee must show that the protected activity was the "but-for" cause of the adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, --- U.S. ----, 133 S. Ct. 2517, 2526, 2533 (2013). Circumstantial evidence, such as timing between the protected act and the adverse employment action, the employer's treatment of the employee, the employer's reaction to the protected conduct, inconsistent or contradictory explanations for the adverse employment action, and statements by the persons involved in the decision making process, can all help determination causation. *Kwan v. Andalex Group LLC*, 737 F.3d 834, 846 (8th Cir. 2013) ("A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action.").

A temporal relationship between the protected activity and the adverse employment action can sometimes constitute circumstantial evidence of a causal connection, but can also suggest a lack of causal connection. "An inference of a causal connection between [protected conduct] and [an adverse employment action] can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." *Arraleh v. County of Ramsey*, 461 F.3d 967, 977 (8th Cir. 2006). On the other hand, "a gap in time between the protected activity and the adverse employment action weakens the inference of retaliation that arises when

a retaliatory act occurs shortly after a complaint." *Grey*, 397 F.3d at 1035 (internal quotations omitted). *See also Stewart*, 481 F.3d at 1044 (stating that "a delay of sufficient length ... tends to evaporate" the causal connection). In *O'Bryan v. KTIV Television*, 64 F.3d 1188, 1193-94 (8th Cir. 1995), the Eighth Circuit Court of Appeals found that three months between an employee's filing of a complaint and the employee's termination was close enough to establish a causal connection. Yet, in *Kipp v. Mo. Hwy. & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002), the Eighth Circuit Court of Appeals found "the interval of two months between the complaint and [the plaintiff's] termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [the plaintiff's] favor on the matter of causal link." The Eighth Circuit Court of Appeals has acknowledged "it is difficult to find a principle neatly explaining why each of [its] cases held temporal connection was or was not sufficient to satisfy the causation requirement, [other than to recognize that] it appears that the length of time between the protected activity and adverse action is important." *Smith*, 302 F.3d at 833. There is, thus, no bright line rule on how short is short enough to show causation, or how long is too long to break a causal connection. Rather, the length of time is only one piece of circumstantial evidence which may, or may not, help determine whether there is a causal connection.

In this case, plaintiff filed the grievance on September 13, 2013, but the mayor did not issue the order of removal until January 3, 2014, and the City Council did not approve plaintiff's termination until January 21, 2014. Thus, some three and half months elapsed between the protected conduct and the adverse employment action. Plaintiff urged at the hearing that the time should be counted from the October 8, 2013, meeting, which addressed the grievance as it was part of the process. Even so, several months still separated the protected conduct from the adverse employment action. In

the end, the court finds the temporal relationship, standing alone, not strongly indicative of retaliation. It may be, however, some evidence of causation a jury could consider.

Plaintiff argues there are discrepancies between the explanations in the mayor's Order of Removal and the mayor's explanations provided during depositions. Doc. 24, at 12. Inconsistencies and discrepancies in explanations for an adverse employment action can establish a causal link. *See*, *e.g.*, *Logan*, 416 F.3d at 883 (changes in an employer's explanation for the adverse employment action can show pretext); *Kobrin v. University of Minnesota*, 34 F.3d 698, 703 (8th Cir. 1994) (same). Plaintiff also urges the court to view the City attorney's involvement in drafting the Order of Removal as evidence it was "scrubbed [ ] clean" of the improper motive held by the mayor. *Id*. There is no basis in the record of undisputed facts to impugn the integrity of the City's attorney or suggest he intentionally scrubbed the Order of Removal clean of improper motives. Indeed, the record is inadequate to establish that the City's attorney was privy to the mayor's internal motivation. On the other hand, there are inconsistencies, to some degree, between the reasons for plaintiff's removal, as stated in the Order of Removal, and the mayor's testimony during his deposition.

Indeed, the mayor's statements during his deposition are what raises a genuine issue of material fact in this case regarding whether plaintiff's filing of the grievance was the but-for cause of his discharge. *Kneibert v. Thomson Newspapers*, 129 F.3d 444, 455 (8th Cir. 1997) (focusing on evidence from person involved in the decision-making process to determine the employer's retaliatory motive). Motive is often difficult to prove by direct evidence. *See*, *e.g.*, *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1115 (10th Cir. 2004) (evaluating mayor's statements for evidence of motive for discharge, acknowledging that "[a] lack of direct evidence is not [ ] uncommon in retaliation cases like this one."); *Smith v. Maschner*, 899 F.2d 940, 949 (10th Cir. 1990) ("Precisely because the ultimate fact of retaliation turns on defendants' state of mind, it

is particularly difficult to establish by direct evidence."). The mayor's statements provide a sufficient window into his motives to at least raise a jury question of whether he was motivated in causing plaintiff's dismissal because he was personally offended by plaintiff filing a grievance "on him."

There is no doubt in the court's mind that the City had legitimate, nonretaliatory grounds for firing plaintiff. The City's belief that plaintiff was not properly enforcing the nuisance ordinance alone is one such ground. There is evidence in the record that enforcement of that ordinance was important to the City. Enforcement of the nuisance ordinance was a focus of plaintiff's initial job interview. Doc. 22, ¶8; Def. App. 162. There is also evidence in the record, long before the filing of any grievances, that the City believed plaintiff was not enforcing the nuisance ordinance with sufficient vigor. Most telling is plaintiff's own acknowledgment in his grievance that several months before plaintiff filed the grievances, the mayor had expressed his displeasure with the lack of enforcement of the nuisance ordinance. Exhibit 24. Finally, the City identified plaintiff's failure to enforce the nuisance ordinance as a reason for his termination. The mayor addressed the lack of enforcement in his Order of Removal. Def. App. 168. The City Council members identified lack of enforcement of the ordinance as one ground for plaintiff's dismissal. Def. App. 162, 173, 179. The City's position that plaintiff failed to adequately enforce the nuisance ordinance has been consistent. Without addressing them all, the record reflects evidence that the City had several additional, legitimate, and nonretaliatory reasons to fire plaintiff.

The court also understands the mayor's frustration with plaintiff's performance and apparent lack of respect for, and deference to, the mayor's position. But, the mayor's testimony raises a genuine issue of material fact whether plaintiff's grievances were the but-for cause of the mayor's decision to fire plaintiff. The mayor's language during his deposition reflects that he viewed the grievances as a personal affront. He

stated, regarding the filing of the grievance that "[w]e need to iron this out instead of throwing a grievance letter on me. I've never had one in my life." Pl. App. 12 (Pyle Depo. 155). His testimony suggests that it was plaintiff's filing of the grievances that constituted the proverbial straw that broke the camel's back. The mayor testified he believed plaintiff was using the filing of the grievances to escape the mayor's control and authority. Pl. App. 13 (Pyle Depo. 159). The mayor stated he believed he lost control of plaintiff when plaintiff "dropped the grievances." Pl. App. 14 (Pyle Depo. 162). Thus, there is evidence in the record from which a jury could conclude that the mayor was motivated in firing plaintiff because plaintiff filed the grievances.

Other circumstantial evidence supports an inference that the mayor was motivated by the grievances in deciding to terminate plaintiff. The mayor's testimony about the impact and importance of the grievances is somewhat inconsistent with his written Order of Removal because in that Oder he did not reference the grievances. Further, the lack of any event between the filing of the grievances on September 13, 2013, and the mayor's Order of Removal on January 3, 2014, further supports the inference that the grievances were the but-for cause of plaintiff's termination. There is nothing else in the record, such as an incident involving the enforcement of the nuisance ordinance, or any other intervening fact, such as a poor work evaluation, during this interim period which would obviously break the causal link inference. The mayor's Order of Removal does relate a continued failure by plaintiff to communicate, to provide reports, and to supply information needed by the mayor, which appear on their face to be legitimate complaints. A jury may ultimately conclude that this pattern of poor communication breaks the causal link. In ruling on a motion for summary judgment, however, the court must view the evidence in the light most favorable to the plaintiff, giving him the benefit of all reasonable inferences. In that light, the evidence creates a genuine issue of material fact whether plaintiff's filing of grievances on the mayor was the but-for cause of the mayor's

18

Order of Removal. Whether plaintiff can convince a jury of that, given his job performance, is a matter left for the trial in June.

There remains the question of whether the City Council's decision somehow insulates the mayor's conduct from constituting causation. The court finds no evidence in the record to support a reasonable inference that the City Council members voted to affirm plaintiff's termination because he filed the grievances. Indeed, the record would suggest that plaintiff's performance at the City Council meeting provided additional grounds for the council members to affirm plaintiff's termination. Def. App. 171-180. Plaintiff asks the court to infer the City Council was motivated to retaliate against him for filing grievances because the City Council members referenced plaintiff's failure to work the hours as instructed by the Mayor. That inference is not valid, however, because the failure to work the required hours is not the same as the filing of the grievance. In other words, there is no cause of action if the City Council voted to affirm plaintiff's dismissal because he refused to work the hours as instructed. Rather, a cause of action lies only if the City Council voted to affirm plaintiff's termination because he filed a grievance claiming a violation of the FLSA for having to work those hours.

The City Council's formal vote affirming plaintiff's termination, however, did not constitute a break in the causal link of plaintiff's termination for two reasons. First, but for the mayor's Order of Removal, the issue of plaintiff's termination would not have been before the City Council. The City has not come forward with any evidence suggesting the City Council was moving forward independently with a plan to terminate plaintiff. Second, the mayor's Order of Removal would have led to plaintiff's termination unless plaintiff asked for a hearing before the City Council. Thus, City Council's action only served to affirm the adverse employment action the mayor had already taken.

Accordingly, the court finds there is a genuine issue of material fact whether the mayor was motivated to terminate plaintiff because he filed the grievances, and whether that motivation was the but-for cause of the mayor issuing the Order of Removal and the City Council's affirmation of plaintiff's termination.

Finally, at the hearing, the parties agreed that the outcome of Count IV, alleging a state claim for wrongful discharge, dictates the outcome of the FLSA retaliation claim in Count I. In other words, the parties agreed that if there is a genuine issue of material fact regarding Count I, then the same would hold true for Count IV. The court agrees and so finds.

## VII. CONCLUSION

For the reasons set forth herein, the City's motion for summary judgment (Doc. 18) is *denied*.

**IT IS SO ORDERED** this 13th day of May, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa